# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SUPERIOR PERFORMERS, INC. d/b/a NATIONAL AGENTS ALLIANCE, | ) ) ) ) | |
| Plaintiff and Counter Defendant, | ) ) ) ) | |
| v. | ) ) | 1:14cv232 |
| JERROD EWING, MYLES JERDAN, DOMONIQUE RODGERS, MATTHEW SMITH, TODD SMITH, SEAN RUGGERIO (MCCOY), MICHAEL KILLIMETT, WILLIAM MARTIN, JOSHUA THOUNE, TRAVIS GEORGE, MIKE WINICK, MICHAEL COE, ROBERT JONES, KRISTOPHER KRAUSE, NICK THEODORE, FAMILY FIRST LIFE, LLC, PAUL E. MCCLAIN, ANDREW C. TAYLOR, JACK YIU, JIM GLASCOTT, JAIME CUAMATZI, WATHERA CUAMATZI, KIM REABER, BOBBY REABER, DENNIS RAUSSEER, JARROD M. FLATAU, RAYMOND MANALUS, ISRAEL WIZENFELD, and LISA M. ESTEP, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants and Counter Claimants, | ) ) ) | |
| v. | ) ) | |
| STEPHEN DAVIES, CHRIS LONG, MICHAEL OWENS, ANDY ALBRIGHT, JASON CAREY, JUSTIN TRIPP, ADAM KATZ, TAWNY CAREY, and PRO DATA RESEARCH, LLC, | ) ) ) ) ) ) ) | |
| Counter Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on the Motion to Dismiss the Amended Counterclaims [Doc. #48] filed by Plaintiff Superior Performers, Inc. ("Plaintiff" or "NAA") and Counterclaim Defendants Andy Albright, Stephen Davies, Michael Owens, Jason Carey, Tawny Carey, Adam Katz, Chris Long, Justin Tripp, Pro Data Research, LLC, and K.I.T. Marketing, LLC (the "Albright Group"). Defendants have filed a Response in Opposition to the Motion [Doc. #50], to which the Plaintiff and the Albright Group (collectively "the Movants") have filed a Reply [Doc. #51]. For the reasons discussed below, the Court will grant in part and deny in part the Movants' Motion to Dismiss.

I.     BACKGROUND

This case is one of several related cases brought by Plaintiff in an attempt to, among other things, enforce restrictive covenants contained in the agent and management agreements entered into by current and former NAA agents and managers. In this particular case, Plaintiff asserted breach of contract claims based on alleged violations of the non-solicitation clauses, as well as claims for breach of contract based on other parts of the agent and managerial agreements. Other claims that Plaintiff alleged in this action include claims for tortious interference with business relationships, unfair and deceptive trade practices, unfair competition, civil conspiracy, and wiretapping.

In response to Plaintiff's Amended Complaint, Defendants filed a combined Answer, Counterclaim, and Third-Party Complaint, in which all Defendants, other than Family First Life ("FFL"), asserted counterclaims against Plaintiff and asserted third-party claims against the Albright Group. The Defendants asserted that these claims arose out of the Movants' alleged

2

operation of a "pyramid scheme," and their actions related to such scheme, which included the "unlawful churning and twisting of insurance policy-holders' insurance polices." Defendants claimed that Plaintiff and the Albright Group are liable for fraudulently inducing Defendants into such scheme. Based on these alleged actions Defendants asserted a total of 12 claims against Plaintiff and the Albright Group. First, Defendants asserted a claim for declaratory judgment, requesting that the Court find that the agent and management agreements are void and unenforceable for lack of consideration, among other arguments. Second, Defendants asserted a claim for rescission of the management and agent agreements based on multiple theories. Third, Defendants asserted a claim for fraud based upon the opposing parties' alleged fraudulent statements and omissions concerning various aspects of Defendants' employment with NAA. Fourth, Defendants also asserted a claim based upon the opposing parties' alleged misrepresentation and suppression concerning various aspects of Defendants' employment with NAA. Fifth, Defendants asserted a claim specifically against Plaintiff for breach of the duties of loyalty, due care, good faith, and fair dealing in relation to the management and agent agreements. Sixth, Defendants asserted a claim for breach of contract against Plaintiff in relation to the management and agent agreements. Seventh, Defendants asserted a breach of contract claim against both Plaintiff and the Albright Group for the alleged breach of oral and implied contracts or agreements concerning alleged claims and promises made by such parties in relation to Defendants' employment with NAA. Eighth, Defendants asserted a claim for defamation against both Plaintiff and the Albright Group concerning alleged statements about Defendants in their trade and business. Ninth, Defendants asserted a claim of conversion against the Plaintiff based on Plaintiff's alleged wrongful withdrawal of funds from Defendants'

bank and credit accounts. Tenth, Defendants asserted a claim for unfair and deceptive trade practices against Plaintiff and the Albright Group, based on their alleged fraud and misrepresentations. Eleventh, Defendants asserted a claim for tortious interference with business or contractual relations against Plaintiff and the Albright Group. Twelfth, Defendants asserted a claim for civil conspiracy against the Movants based on the allegation that they acted in concert in committing the above violations. Defendants also asserted a separate claim for punitive damages based on the alleged foregoing actions.

The Movants filed Motions to Dismiss the Counterclaim and Third-Party Complaint [Docs. #29 & #31] for improper joinder of the Albright Group and because the Movants alleged that it was impossible to distinguish the claims made against Plaintiff versus the clams made against the Albright Group. The Court denied the Motion to Dismiss based on those arguments, and found that the Albright Group were proper Counterclaim Defendants. As a result, the Court directed the Defendants to file an Amended Answer and Counterclaim and assert its claims against the Albright Group as counterclaims, rather than third-party claims. The Defendants complied with the Court's order, and filed an Amended Answer and Counterclaim Complaint asserting its claims against all Movants as counterclaims.

The Movants have now filed a Motion to Dismiss the Answer and Counterclaim Complaint. In this Motion, the Movants are now arguing that Defendants' counterclaims, other than their claim for declaratory judgment, should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Additionally, the Movants argue that the Defendants' claim for declaratory judgment should be dismissed as redundant of the affirmative defenses pled by Defendants. For the reasons stated below, the Court will grant in

4

part and deny in part, Movants' Motion to Dismiss the Answer and Counterclaim Complaint.

## II.    DISCUSSION

Initially, the Court will address Defendants' argument that this is a successive Motion to Dismiss barred by the Federal Rules of Civil Procedure. Upon addressing this argument, the Movants' two arguments in favor of dismissal will then be addressed in turn.

### A.    Successive Motion to Dismiss

Defendants argue that this Court should not consider any argument presented in the Movants' Motion to Dismiss, as it is a successive motion brought pursuant to Rule 12(b)(6) and as such, it is barred by the Federal Rules of Civil Procedure. As to successive motions brought pursuant to Rule 12 of the Federal Rules of Civil Procedure, Rule 12(g)(2) states, "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The exceptions in Rule 12(h) concern when such motions are made in the form of a motion for judgment on the pleadings, or those contained in the parties' pleadings. Accordingly, the exceptions do not apply in this case.

Courts, however, have interpreted the bar on successive Rule 12 motions "permissively and have accepted subsequent motions on discretionary grounds." F.T.C. v. Innovative Marketing, Inc., 654 F. Supp. 2d 378, 383 (D. Md. 2009) (citations omitted) (considering a successive motion to dismiss in light of new law). This reading is said to comport "with the general spirit of the rules" and promote "the interests of efficiency." Id. (citations omitted). Specifically, concerning the interests of efficiency, courts have recognized that "[u]nder Rule 12(h) [a 12(b)(6) argument] could be raised in a judgment on the pleadings or at trial[.]" Dart

Drug Corp. v. Corning Glass Works, 480 F. Supp. 1091, 1095 n. 3 (D. Md. 1979). Accordingly, "it is far more efficient to treat the arguments prior to more extensive discovery." Id.

Initially, the Court notes that the Movants do not contest that this is a successive Motion to Dismiss that is typically bared by Rule 12(g). Instead, the Movants only argue that in the interests of efficiency, the Court should consider the Motion to Dismiss on the merits. While the Court in no way approves of the Movants' apparent piecemeal litigation method in this case, the interests of judicial efficiency do strongly favor considering the Movants' successive Motion to Dismiss in this instance. As stated above, this case is one of several cases that were filed in this Court involving the same or similar subject matter. In the consolidated case, Case Number 1:13CV1149, a similar Motion to Dismiss the Counterclaims for failure to state a claim was filed. As this Court has now considered those arguments in Case Number 1:13CV1149, it would be more efficient to also consider the same arguments raised in this action, rather than wait to consider such arguments on a Motion for Judgment on the Pleadings. Accordingly, the Court will address the Movants' arguments on the merits below, and will decline to deny this Motion to Dismiss on procedural grounds.

B.    Declaratory Judgment

The Defendants' first counterclaim is one for declaratory judgment. In this claim, Defendants assert that the agent and management agreements should be found void and unenforceable. The Movants, however, briefly argue that this claim is redundant of the defenses asserted by Defendants and as such, it should be dismissed. In support of their argument, the Movants cite one unpublished case from the Middle District of Florida. See Sembler Family P'ship, No. 41, Ltd. v. Brinker Florida, Inc., No. 8:08CV1212-T-24 MAP, 2008 WL 5341175,

6

at *1 (M.D. Fla. Dec. 19, 2008) (dismissing declaratory judgment counterclaim when it was duplicative of the main action).[1]

Pursuant to Fourth Circuit precedent, a district court, in its discretion, may decline to entertain a declaratory judgment claim for "good reason." <u>Volvo Const. Equip. N. Am., Inc. V. CLM Equip. Co.</u>, Inc. 386 F.3d 581, 594 (4th Cir. 2004). "[A] district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " Id. (quoting <u>Aetna Cas. & Sur. Co. v. Quarles</u>, 92 F.2d 321, 325 (4th Cir. 1937)).

In this instance, the declaratory judgment claim may resolve and clarify the issue of whether valid and enforceable agreements exist for purposes the Movants' defenses to Defendants' counterclaims.[2]  Additionally, it may serve to terminate the Plaintiff's breach of contract claim against Defendants, as a void and unenforceable contract would not be subject to a claim for breach of contract.  Accordingly, while such claim may be redundant of Defendants' affirmative defenses, the Court will, in its discretion, deny Movants' Motion to Dismiss Defendants' declaratory judgment claim at this stage of the litigation based on the

---

[1]Based on their citation, it appears that the Movants seek to have the claim dismissed as redundant pursuant to the Court's discretionary authority in deciding whether to declare the rights of litigants, rather than seeking to strike the claim as redundant pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

[2]As will be more fully addressed below, the Movants argue that many of the counterclaims should be dismissed as being contrary to the explicit terms of the agreements. If the Court declares that such agreements are void and unenforceable, the Movants arguments concerning the controlling nature of the terms of the agreements would be resolved, as a void and unenforceable contract would not be used to establish the respective obligations or rights of the parties.

7

Movants' brief argument.

### C. Failure to State a Claim

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Fourth Circuit has directed that courts " 'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.' " Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a [claim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a [claim] pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted). Thus, dismissal of a claim is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.' " Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir.

8

2009) (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. 1937).

The Movants argue that Defendants have failed to state a claim as to all claims other than Defendants' claim for declaratory judgment, which as stated above, they argue should be dismissed as redundant. The Court will address each of the 11 other claims, in addition to Defendants' claim for punitive damages in turn.

### 1.    Rescission - Second Count

The Defendants' second counterclaim seeks the rescission of Defendants' agent and management agreements that are at issue in Plaintiff's case-in-chief. Defendants assert that they are entitled to rescission of these agreements because the agreements were the result of material misrepresentations and omissions, duress, and because such agreements are unconscionable contracts of adhesion. The Movants assert that the claim for rescission must be dismissed because Defendants have failed to meet the pleading standards for any of these theories under which the Defendants base their claim for rescission.

The Court initially notes that rescission itself is not a cause of action but rather, rescission is an equitable remedy. See Marriott Financial Services, Inc. v. Capitol Funds, Inc., 217 S.E. 2d 551, 560–64 (N.C. 1975) (analyzing a claim for the equitable remedy of rescission based on mistake or fraud). Accordingly, in order to state a claim for the remedy of rescission, Defendants must have stated a plausible underlying claim for such relief. See Synovus Bank v. Okay Properties, LLC, No. 1:11CV330, 2012 WL 3745280, at *8 (W.D.N.C. August 28, 2012) (finding that because the defendants' counterclaim for rescission was based on fraud, the defendants must have stated a plausible claim for fraud). Movants first argue that Defendants are not entitled to rescission for fraud because Defendants failed to meet the pleading standards

9

for fraud. As this Court will more fully address below as to Defendants' specific fraud claim, the Court finds that Defendants have in fact adequately pled their claim of fraud against Plaintiff. Accordingly, because Defendants have adequately pled fraud, they may maintain their claim for rescission of the agent and management agreements based on such theory.

The Movants next argue that Defendants failed to adequately plead duress, and therefore are not entitled to rescission of the agreements based on such theory. North Carolina allows a party to avoid contractual obligations under a contract if the party entered into such contract under duress. In re Maco Homes, Inc., No. 95-2938, 95-2939, 1996 WL 511494, at *4 (4th Cir. Sept. 10, 1996). In order to establish economic duress, a party must show:

> (1) a threatened breach that the promised performance will not be received and that breach will result in irreparable injury; (2) the threat is effective because of economic power not derived from the contract itself; (3) the threatened party could not enter into a contract with a third party replacing the threatening party, i.e., the party could not obtain the 'goods' from another source of supply; and (4) there is no immediate legal remedy available.

G.E.B. v. QVC, Inc., 129 F. Supp. 2d 856, 861 (M.D.N.C. 2000) (citing Rose v. Vulcan Materials Co., 194 S.E.2d 521, 536–37 (N.C. 1973).

After reviewing Defendants' 99 page Answer and Counterclaim Complaint, the Court finds that Defendants have not adequately pled that the agreements were entered into as a result of economic duress. Defendants assert that the only obligation Plaintiff had under the contract was to use commercially reasonable efforts to make insurance leads[3] available to Defendants. Defendants argue that Plaintiff threatened to withhold this obligation if Defendants did not join clubs, attend seminars, purchase materials, and pay for other additional add-on expenses. Thus,

---

[3]Defendants define the term leads as "names of people who are supposedly interested in buying insurance[.]" (Counterclaim Complaint [Doc. #47], at 19.)

Defendants are not asserting that they entered into the agreements as a result of economic duress, but rather that they were forced into doing extra-contractual activities, such as joining clubs, *after* they entered into the agreement. Accordingly, because Defendants have not asserted that they entered into the agreements as a result of the extra-contractual activities, Defendants cannot base their claim for rescission on a theory of economic duress.

The Movants also argue that Defendants cannot assert their claim for rescission based on unconscionability of the agreements. To state a plausible claim for unconscionability, a party must assert that the agreement is both procedurally and substantively unconscionable. Tillman v. Commercial Credit Loans, Inc., 655 S.E. 2d 362, 370 (N.C. 2008). "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Id. (citations omitted). "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." Id.

The Court finds that Defendants Counterclaim Complaint taken as a whole, does in fact plead the necessary elements of unconscionability for purposes of Rule 12(b)(6). First, Defendants have asserted procedural unconscionability, as Defendants refer to the fact that in order to gain access to Plaintiff's website to obtain leads, they were required at various times to check a box consenting to the agreements or they were locked out of the website. Furthermore, Defendants assert that the terms of these agreements were concealed and obstructed by Plaintiff. See Wilkerson ex rel. Estate of Wilkerson v. Nelson, 395 F. Supp. 2d 281, 289 (M.D.N.C. 2005) ("It may be that the arbitration agreement was drafted and positioned in a manner that would avoid drawing undue attention to its terms, and may constitute procedural unfairness.").

11

Accordingly, Defendants have asserted procedural unconscionability. Additionally, Defendants have asserted substantive unconscionability, based on what Defendants argue are unfair terms, including requiring Defendants to expend substantial sums of money on things such as joining clubs and attending seminars. Thus, at this time Defendants have adequately pled both procedural and substantive unconscionability so as to support their claim for rescission. As a result of Defendants adequately pleading the underlying theories of fraud and unconscionability, Defendants' counterclaim for the equitable right of rescission, is only dismissed insomuch as it is premised on economic duress.

2. Fraud - Third Count

In support of their Motion to Dismiss for failure to state a claim, the Movants argue that Defendants have not pled their fraud claim with sufficient particularity. Specifically, the Movants argue that Defendants have not alleged which individual entity or person committed the various acts of fraud, or what acts in general were fraudulent. Rule 9(b) of the Federal Rules of Civil Procedure provides that a party alleging fraud "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Courts interpret this particularity requirement as requiring that parties plead the " 'time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby.' " Liner v. DiCresce, 905 F. Supp. 280, 287 (M.D.N.C. 1994) (quoting Riley v. Murdock, 828 F. Supp. 1215, 1225 (E.D.N.C. 1993)). The requirement that the identity of each person making the misrepresentation be pled with particularity is especially important in a multi-defendant, or multi-counterclaim defendant case. Dealers Supply Co., Inc. v. Cheil Industries, Inc., 348 F. Supp. 2d 579, 589–90 (M.D.N.C. 2004). Thus, where there are

multiple parties involved in the fraud, the claimant must allege all claims with particularity as to each such party.  <u>Id.</u>

After reviewing Defendants' extensive Counterclaim Complaint, the Court finds that taking the document as a whole, Defendants have adequately pled their claim for fraud against Plaintiff and the various members of the Albright Group, other than Justin Tripp.  It is correct that under the particular count of fraud listed in Defendants' Counterclaim Complaint, the allegations of fraud are stated generally against all Movants.  Defendants, however, in the earlier part of the Counterclaim Complaint specifically list out the various misrepresentations that were made by the specific individual Movants within the Counterclaim Complaint or that were made on behalf of Plaintiff by way of Plaintiff's agents or employees.  These allegations are incorporated by reference into the fraud count.  The Court, however, was unable to locate specific allegations of false statements made by Movant Justin Tripp.  The following is a list of examples of at least one allegation of fraud against each of the particular Movants, other than Tripp:

- Plaintiff - "Prior to joining NAA and/or continuing throughout [Defendants'] tenures at NAA, NAA on its website and elsewhere, portrayed certain agents as "success stories" and falsely represented the income levels of such agents." (Counterclaim Complaint, [Doc. #47], at 23.)
- Andy Albright - "Albright told Jones that if he quit his full-time job he could make $100,000 a month like Katz." (<u>Id.</u> at 43.)  Defendants assert that this statement by Albright was false.
- Stephen Davies - "The false statements on [the NAA and NAA Agent websites] are, among other things, the specific statements about incomes that current agents (including . . . Davies . . . ) make working for NAA, the statements about the availability of leads, and the statements about profit from leads." (<u>Id.</u> at 22.) This statement was made in conjunction with the representation that such assertions were false.
- Adam Katz - "[A]t NAA conventions . . . Katz and NAA continued to represent to those in attendance including numerous of the [Defendants], that Katz generated annual income in excess of $1,000,000 from NAA." (<u>Id.</u> at 25.)  This

statement was made in conjunction with the representation that such amount was false.

- Chris Long - "Mark Womack, Andy Riddle, and Chris Long all stated that they earned over $500,000 in the previous year, and they said that everyone in the room could earn over $1 million dollars per year if they would just follow the NAA system." (Id. at 50.) This statement was made in conjunction with the representation that such assertions were false.

- Michael Owens - "The false statements on [the NAA and NAA Agent websites] are, among other things, the specific statements about incomes that current agents (including . . . Owens . . . ) make working for NAA, the statements about the availability of leads, and the statements about profit from leads." (Id. at 22.) This statement was made in conjunction with the representation that such assertions were false.

- Jason Carey - "The false statements on [the NAA and NAA Agent websites] are, among other things, the specific statements about incomes that current agents (including . . . J. Carey . . . ) make working for NAA, the statements about the availability of leads, and the statements about profit from leads." (Id. at 22.) This statement was made in conjunction with the representation that such assertions were false.

- Tawny Carey -"The false statements on [the NAA and NAA Agent websites] are, among other things, the specific statements about incomes that current agents (including . . . T. Carey . . . ) make working for NAA, the statements about the availability of leads, and the statements about profit from leads." (Id. at 22.) This statement was made in conjunction with the representation that such assertions were false.

- Pro Data Research, LLC - "Additionally, on multiple occasions, after the [Defendants] spent substantial sums of money recruiting agents and building their teams in a particular area, NAA and PDR would allocate leads for the area only to the agents in the area that were directly downline to NAA or Albright . . . rather than the agents on the [Defendants'] teams[.]" (Id. at 36.) This statement was made in conjunction with the representation that such actions were contrary to what had been previously represented to Defendants.

- K.I.T. Marketing, LLC - "NAA's agents are pressured to purchase and pay periodic payments to KIT Marketing for these services, which the agents are told will benefit them by having someone keep in touch with the customers on the agents' behalf and in the name of the agent. However, NAA's agents do not know, because it is kept secret from them, that KIT Marketing and NAA are being used against the agents, to churn the agents' customers by churning the insurance policy-holders' insurance policies." (Id. at 40–41.)

Accordingly, the Movants' argument that the fraud claims were not pled with particularity because they did not identify which entity or individual made the misrepresentations constituting

14

the fraud, is without merit as to all Movants, other than Tripp. Defendants' Counterclaim Complaint references specific misrepresentations or fraudulent conduct by or on behalf of the other individual Movants. However, as this Court was unable to locate a specific fraudulent act alleged to have been undertaken specifically by Tripp and Defendants have not provided such an example, the Defendants' counterclaim for fraud must be dismissed as to Tripp.

### 3. Misrepresentation/Suppression - Fourth Count

Defendants' fourth counterclaim, is a claim for misrepresentation and suppression. Defendants assert that the Movants made specific misrepresentations and concealed other material facts concerning Defendants' employment with NAA. The Movants argue that this claim should be dismissed because it has the same deficiencies as Defendants' claim for fraud. The Movants further argue that the misrepresentation claim should be dismissed because Defendants have failed to allege any facts that would give rise to a legally recognized duty to disclose information. Additionally, the Movants assert that Defendants' suppression claim should be dismissed because such a claim does not exist in North Carolina. The Court notes that because the Court found that the fraud claim is sufficiently pled as to all Movants other than Tripp, the Movants first argument that the this claim fails for the same reason as the fraud claim is without merit as to all Movants other than Tripp. The Court, however, will specifically address the other two remaining arguments concerning this claim.

Pursuant to North Carolina law, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Raritan River Steel Co. v. Cherry Bekaert & Holland, 367 S.E. 2d 609, 612 (N.C. 1988). Breach of the duty of care may occur when "[o]ne

who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, . . . is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." <u>Kindred of North Carolina, Inc. v. Bond</u>, 584 S.E. 2d 846, 853 (N.C. Ct. App. 2003) (quoting <u>Jordan v. Earthgrains Cos. Inc.</u>, 767, 576 S.E. 2d 336, 340 (N.C. Ct. App. 2003)).

The above examples of the alleged fraudulent misrepresentations made by each party show that Defendants have sufficiently alleged facts indicating that the Movants, other than Tripp, owed Defendants a duty of care for supplying false information in their business transactions. All of the alleged false information was provided to the Defendants in the context of their employment with NAA, and Defendants allege that such information caused them to sign the agent and management agreements at issue or to continue to expend money in relation to NAA. Furthermore, Defendants allege that the structure of NAA is that of a pyramid scheme, and all Movants are either above the Defendants in the hierarchy or are the corporate entities employing or contracting with Defendants. Thus, it can be inferred that the Movants had a pecuniary interest in Defendants' continued employment with NAA as they were presumably financially benefitting from those below them in the alleged pyramid hierarchy. Thus, the Court finds that Defendants have sufficiently pled facts supporting a claim for misrepresentation based on a breach of the duty of care for all Movants except Tripp.

The Court, however, finds that Defendants' claim for suppression must be dismissed. Defendants attempt to assert a suppression claim in conjunction with their claim for

misrepresentation based on the Movants' negligent concealment or omissions. As this Court has previously found in two other instances, a claim based on such negligent concealment or omission, as opposed to affirmative misrepresentations, does not currently exist under North Carolina law. Breeden v. Richmond Community College, 171 F.R.D. 189, 202–02 (M.D.N.C. 1997); Pearson, v. Gardere Wynne Sewell LLP, 814 F. Supp. 2d 592, 608 n.11 (M.D.N.C. 2011). Accordingly, Defendants' claim for suppression is dismissed, as such claim does not exist pursuant to North Carolina law.

4. Breach of Duties of Loyalty, Due Care, Good Faith, and Fair Dealing – Fifth Count

Defendants' fifth counterclaim alleges that Plaintiff breached the duties of loyalty, due care, good faith, and fair dealing that are implied in the agent and management agreements. The Movants argue that Defendants did not allege any specific conduct that would breach any of the express terms of the contract, and thus, they argue that Defendants cannot assert a breach of the duties of good faith and fair dealing.

Pursuant to North Carolina law, all contracts contain " 'an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.' " Sunset Beach Development, LLC v. AMEC, Inc., 675 S.E. 2d 46, 57 (N.C. Ct. App. 2009) (quoting Bicycle Transit Authority, Inc. v. Bell, 333 S.E.2d 299, 305 (N.C. 1985)). In this instance, Defendants have asserted that if a valid contract exists, NAA has breached its obligation under such contract to use commercially reasonable efforts to make insurance leads available to Defendants. (Counterclaim Complaint, [Doc. #47], at 31–32, 91.) Defendants further detail the way in which this obligation was breached. (Id.)

17

Accordingly, Defendants have sufficiently pled that NAA took actions that injured Defendants' right to receive the benefits they were owed under the contract. As such, Movants' Motion to Dismiss Defendants' claim for breach of the duties of duties of loyalty, due care, good faith, and fair dealing[4] will be denied.

     5.     Breach of Contract Claims - Sixth and Seventh Counts

The sixth counterclaim that Defendants assert is a beach of contract claim against NAA. The Movants assert that this claim should also be dismissed for the same reasons that the Movants sought to have the Defendants' claim for breach of the duties of good faith and fair dealing dismissed. The Movants again argue that Defendants have not alleged any specific conduct that would breach any of the express terms of the contract. As the Court found above, however, Defendants have sufficiently pled that NAA breached its contractual obligation to use commercially reasonable efforts to make insurance leads available to Defendants. Accordingly, the Court will deny Movants' Motion to Dismiss Defendants' claim for breach of contract against NAA.

The Defendants also assert a breach of contract claim against both the Plaintiff and the Albright Group. This claim is based on a breach of oral or implied contracts. The Movants argue that this claim must be dismissed because Defendants have failed to assert any promises that Plaintiff or the Albright Group made to Defendants or how such promises were breached. Additionally, the Movants argue that this claim conflicts with the express terms of the actual

---

    [4]The Court notes that the Movants do not argue that Defendants failed to adequately plead a breach of the duties of loyalty and due care. Instead, the Movants focus their argument solely on the duties of good faith and fair dealing. As such, Defendants' claim for breach of the duties of loyalty and due care remain as validly stated claims against the Movants.

written agreements and that it conflicts with the merger clause contained in the actual agreements.

To state a claim for breach of contract, a party must allege the, "(1) existence of a valid contract and (2) breach of that contract." <u>Poor v. Hill</u>, 530 S.E. 2d 838, 845 (N.C. Ct. App. 2000). Initially, the Court notes that Defendants have in fact alleged specific promises made by the NAA and the Albright Group. For instance, Defendants allege that the Albright Group and NAA, through its websites, promised that "[Defendants'] businesses, including their customers and clients, and the agents they recruit to be part of their downline, could never be taken away." (Counterclaim Complaint, [Doc. #47], at 26.) Later in the Counterclaim Complaint, Defendants assert that this promise was broken, as the Defendants' downlines were eventually removed. (<u>Id.</u> at 34.) Accordingly, Defendants have sufficiently alleged that certain promises were made by Plaintiff and the Albright Group and that such promises were later broken.

Furthermore, the argument that the merger clause subsumes these promises or that they are contradicted by the express terms of the written contract are without merit at this stage of the litigation. The written contracts were not entered into between the Albright Group and the Defendants, but rather the contracts were entered into between NAA and the Defendants. Therefore, because the written agreements are not agreements between the Albright Group and Defendants, it is unclear how such agreements would control the effect of the alleged oral contracts between the Defendants and the Albright Group. Accordingly, at least as to the oral contracts between Defendants and the Albright Group, the merger clause would not appear to apply. Additionally, Defendants are seeking to have the agreements with NAA that contain the merger clause declared void and unenforceable. If the Court declares such contracts void, the

19

terms would not be enforced against Defendants, and the terms would not effect the oral contracts between the Defendants and NAA. Thus, the Movants' merger clause argument is without merit and the Movants' Motion to Dismiss the breach of contract claims will be denied.

6.    Defamation - Eighth Count

Defendants' eighth counterclaim is a claim for defamation in which the Defendants assert that the Movants published defamatory statements about the Defendants. The Movants argue that this claim for defamation should be dismissed because Defendants failed to specifically allege the defamatory statements made by any of the Movants. Additionally, the Movants argue that the defamation claims cannot succeed against any of the corporate entities, NAA, K.I.T. Marketing, and Pro Data Research, because comments made after Defendants' termination cannot be attributed to the corporate employer.

To establish a defamation claim under North Carolina law, a party must prove: "(1) defendant spoke [or published] base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." West v. King's Dept. Store, Inc., 365 S.E. 2d 621, 624 (N.C. Ct. App. 1994) (citations omitted). The Movants argue that the first element is insufficiently pled because Defendants have not indicated the particular statements that were made by each Movant. In support of the contention that this lack of specificity requires dismissal, the Movants cite two North Carolina Court of Appeals cases. However, as this case is before a federal court and not a North Carolina state court, the Federal Rules of Civil Procedure concerning pleading apply.

20

The Fourth Circuit has concluded that the Federal Rules of Civil Procedure do not require a heightened or special pleading standard for defamation claims. Moore v. Cox, 341 F. Supp. 2d 570, 575 (M.D.N.C. 2004). Accordingly, the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure, in conjunction with "the universally accepted and mandatory authorities of Twombly and Iqbal, adequately and accurately set forth the standard of review" that is to be applied to the Movants' Motion to Dismiss. Araya v. Deep Dive Media, LLC, 966 F. Supp. 582, 588 (W.D.N.C. 2013).

In Defendants' Counterclaim Complaint, Defendants allege that,

> NAA, Albright, Davies, Owens, J. Carey, T. Carey, Katz, Long, and Tripp have been systematically attempting to destroy [Defendants'] and FFL's reputations by lying and otherwise intentionally and recklessly broadcasting and publishing untrue statements of fact . . . about [Defendants'] and FFL's and its agents' ethics, morals, and character; their performance while working with NAA; their reasons for leaving; that [Defendants'] and FFL are "under federal indictment," that [Defendants] and FFL are being prosecuted both civilly and criminally, that NAA and Albright are going to have them thrown in jail, and various other matters.

(Counterclaim Complaint, [Doc. #47], at 43–44.) Through these allegations, Defendants have sufficiently alleged that NAA, Albright, Davies, Owens, J. Carey, T. Carey, Katz, Long, and Tripp have made defamatory statements against Defendants. While Defendants do not provide particular statements made by each of these Movants, Defendants do provide defined categories of statements which provide reasonable notice to the parties as to the claims that Defendants are asserting against them. The categories are not just conclusory statements, but instead, the categories provide sufficient factual content so as to allow the Court to draw the reasonable inference that the particular Movants proffered such statements.

The Court, however, does note that Pro Data Research and K.I.T. Marketing were not alleged to have made any defamatory statements. Thus, the defamation claim must be dismissed

as to both Pro Data Research and K.I.T. Marketing for failure to state a claim against such entities. Additionally, as the statements described above appear to have been made after Defendants left employment with NAA, those statements cannot be attributed to NAA. See Gibson v. Mutual Life Ins. Co. of New York, 465 S.E. 2d 56, 59 (N.C. Ct. App. 1996) (finding that because statements were made after party was terminated from employment, the statements could not, as a matter of law, be imputed to the employer) (citing Stutts v. Power Co., 266 S.E.2d 861, 865 (N.C. Ct. App. 1980)). Accordingly, the defamation claim must also be dismissed as to NAA.

### 7. Conversion - Ninth Count

Defendants' claim for conversion against NAA alleges that NAA withdrew funds from the Defendants' bank accounts, which NAA did not have the authority to withdraw. Defendants assert that any prior authorization to withdraw such funds had been revoked at the time NAA withdrew some of the funds at issue. The Movants argue that this claim should be dismissed because it is barred by the express terms of the agent and managements agreements. Specifically, the Movants assert that the agent and management agreements require that the Defendants provide NAA with notice of any discrepancies in their accounts within 30 days from the date that Defendants receive their bank statements. The Movants argue that because notice was not provided within 30 days, any claim is time barred.

Pursuant to North Carolina law, the two essential elements that are necessary to state a claim for conversion are: "(1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." Bartlett Milling Co., L.P. v. Walnut Grove Auction and Realty Co., Inc., 665 S.E. 2d 475, 489 (N.C. Ct. App. 2008) (citation omitted). The Movants do not argue that Defendants

failed to plead either of these two elements, but instead, the Movants argue that the claim is time barred based on the agreements. The Court finds that Movants' argument is without merit. First, Defendants, in their Counterclaim Complaint, seek a declaratory judgment that those same agreements are void and unenforceable. Therefore, if the Court does find the agreements to be unenforceable, any time period set forth in such agreements for providing notice would necessarily be unenforceable. Second, Defendants argue that even after the employment relationship ended, NAA was still making unlawful withdraws from their bank accounts at a time when the agreements were allegedly no longer applicable. Accordingly, even if the time period provided in the agreement would bar Defendants' conversion claim, it is not clear at this time that such agreement is enforceable. Thus, the Movants' Motion to Dismiss Defendants' counterclaim for conversion will be denied.

### 8. Unfair and Deceptive Trade Practices Act - Tenth Count

The Movants next seek to dismiss the tenth counterclaim that alleges a violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). In this claim, Defendants assert that the Movants' fraud, false statements, and misrepresentations set forth in the Counterclaim Complaint constitute unfair and deceptive practices. The Movants, however, assert that such claim must be dismissed because Defendants have failed to properly allege any claims of fraud and the Defendants' allegations regarding the use of insured client contact information are contradicted by the express terms of the agreement. Additionally, the Movants argue that Defendants' allegations that the lead practices constitute unfair and deceptive practices can only be asserted under a breach of contract theory because such allegations fall within the express agreements of the parties.

23

Initially, the Court notes that the Movants' first two arguments for dismissal are faulty for the reasons more fully stated above in relation to Defendants' other claims. First, as the Court found above, Defendants have sufficiently stated a claim for fraud against the Movants. Thus, the Movants argument that the UDTPA claim fails as a result of the fraud claim failing, is without merit. Second, as stated above in relation to Defendants' claim for conversion, the Defendants seek a declaratory judgment that the agreements between the parties are void and unenforceable. Accordingly, if the Court does find such agreements to be unenforceable, any of the alleged contradicting terms would be unenforceable. Thus, an argument that any part of the UDTPA claim must be dismissed because it contradicts the terms of the agreement is also without merit.

Furthermore, the Movants' argument that Defendants' allegations regarding lead practices can only be asserted under a breach of contract theory is equally without merit. As this Court has stated in a previous Memorandum Opinion and Order issued in this case, the economic loss doctrine "prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." Lord v. Customized Consulting Specialty, Inc., 643 S.E. 2d 28, 30 (N.C. Ct. App. 2007). Therefore, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350 (1978). Rather, tort claims are limited to those that are identifiable and distinct from the primary breach of contract claim. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998).

In this action, Defendants are asserting a breach of contract claim. Such claim, however, is based on NAA's alleged breach of its contractual obligation to use commercially reasonable

efforts to make insurance leads available to Defendants. Defendants' UDTPA claim is not based on such an alleged breach. Instead, Defendants base their UDTPA claim on the Movants' alleged fraud, false statements, and misrepresentations. These allegations are separate and distinct from Defendants' claim for breach of contract. Accordingly, the Movants' Motion to Dismiss Defendants' UDTPA claim will be denied as it is not prohibited by the economic loss doctrine. Rather, Defendants' UDTPA claim is based on the claims of fraud, false statements, and misrepresentations made by the Movants, which are not related to nor do such claims give rise to Defendants' breach of contract claim based on NAA's alleged breach of its contractual obligations.

        9.     Tortious Interference with Business or Contractual Relationships - Eleventh Count

Defendants' eleventh counterclaim is a claim for tortious interference with business or contractual relationships. In this claim, Defendants allege that the Movants wrongful conduct has interfered with Defendants' and FFL's business. It is unclear, however, as to what wrongful conduct that Defendants are referring to. The Movants assert that this claim should be dismissed because Defendants failed to plead that the Movants knew of any contracts that Defendants or FFL had with others. Additionally, Movants argue that Defendants failed to identify any contract that was not performed or signed, and failed to identify any customers that were lost.

To state a claim for tortious interference with contract, the Defendants must show that (1) a valid contract existed between the Defendants and a third party which confers a contractual right against that third party, (2) the Movants knew of such contract, (3) the Movants

25

intentionally induced the third party not to perform pursuant to the contract, (4) in doing so the Movants acted without justification, and (5) the Movants' actions resulted in actual damage to the Defendants. Embree Constr. Group, Inc. v. Rafcor, Inc., 411 S.E. 2d 916, 924 (N.C. 1992) (citing United Lab, Inc. v. Kuykendall, 370 S.E. 2d 375, 387 (N.C.1988)).

In this instance, Defendants have not asserted that any contracts specifically existed between Defendants and any third-party. Defendants certainly describe the alleged wrongful conduct of NAA and other certain Movants in churning and twisting NAA's Agents' business. (See Counterclaim Complaint, [Doc. #47], at 38–42.) These statements, however, are only generalized statements of NAA's practices and do not specify any contracts that existed between Defendants and third-parties. Accordingly, as Defendants have failed to state the existence of valid contracts between themselves and third-parties, the counterclaim for tortious interference will be dismissed.

10.    Civil Conspiracy - Twelfth Count

The twelfth count of Defendants' Counterclaim Complaint alleges a claim for civil conspiracy against the Movants. Defendants assert that the individual members of the Albright Group have conspired with each other and with Plaintiff to commit the other torts alleged in the Counterclaim Complaint. The Movants argue that Defendants have not alleged sufficient facts to support the allegation that an agreement existed between the individual Movants.

In order to state a claim for civil conspiracy under North Carolina law, Plaintiff must allege that there was: "(1) an agreement between two or more persons to commit a wrongful act; (2) an act in furtherance of the agreement; and (3) damage to the plaintiff as a result." Eli Research, Inc. v. United Comm. Group, LLC, 312 F. Supp. 2d 748, 763 (M.D.N.C. 2004) (citing

<u>Pleasant Valley Promenade, L.P., v. Lechmere, Inc.</u>, 464 S.E. 2d 47, 54 (N.C. Ct. App. 1995)).

While the Movants argue that sufficient facts have not been pled to show an agreement existed, the Court finds that, after a review of the Counterclaim Complaint, such facts were in fact, sufficiently pled. Specifically, at least as it relates to the allegations of defamatory statements and fraudulent misrepresentations, the Defendants allege that the Movants acted in concert and through a joint enterprise to make such defamatory statements and fraudulent misrepresentations. (<u>Id.</u> at 44.) These allegations provide sufficient detail to allege an agreement at this stage of the litigation. Accordingly, the Court will deny Movants' Motion to Dismiss insomuch as it relates to Defendants' civil conspiracy claim.

### 11. Punitive Damages

Defendants' last claim in their Counterclaim Complaint, which they label as a thirteenth count, is a claim for punitive damages. Defendants assert that they are entitled to punitive damages based on the alleged conduct contained in the claims that proceed the punitive damages claim. The Movants argue that this claim should be dismissed if all other counterclaims are dismissed because punitive damages cannot be awarded unless the opposing party is also liable for compensatory damages. As this Court has not dismissed the entirety of the claims described above, the Movants' argument is without merit, as it is still possible that the Movants will be liable for compensatory damages. Accordingly, the Movants' Motion to Dismiss Defendants' counterclaim for punitive damages will be denied.

## III. CONCLUSION

In sum, for the reasons stated above, the Movants' Motion to Dismiss the Amended Counterclaims is granted in part and denied in part. Specifically, the Motion to Dismiss is

granted as to Defendants' claim for rescission based on duress, the fraud claim as to only Justin Tripp, the misrepresentation claim as to only Justin Tripp, the suppression claim, the tortious interference claim, and the defamation claim insomuch as it relates to the corporate Movants, which are NAA, K.I.T. Marketing, LLC, and Pro Data Research, LLC.  The Motion to Dismiss, however, is denied as to Defendants' claim for declaratory judgment, the rescission claim based on fraud and unconscionability, the fraud claim as to all Movants other than Justin Tripp, the misrepresentation claim as to all Movants other than Justin Tripp, the breach of the duties of loyalty, due care, good faith, and fair dealing claim, the breach of contract claims, the defamation claim insomuch as it relates to the non-corporate Movants, the conversion claim, the UDTPA claim, the civil conspiracy claim, and the punitive damages claim.

IT IS THEREFORE ORDERED that the Movants' Motion to Dismiss the Amended Counterclaims  [Doc. #48] is hereby GRANTED IN PART AND DENIED IN PART as described above.

This the 19th day of June, 2015.

United States District Judge

28